13-386-cr
*United States v. Siu Ping Yuen*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of May, two thousand fourteen.

PRESENT:
      AMALYA L. KEARSE,
      CHESTER J. STRAUB,
      SUSAN L. CARNEY,
            *Circuit Judges.*

─────────────────────────────────────

UNITED STATES OF AMERICA,

             *Appellee,*

    -v.-                             No. 13-386-cr

DOMINICK YUEN BONOMOLO, MEI CHUN TAM,
         AKA Mei Tam Chun,

             *Defendants,*

SIU PING YUEN, AKA Pamela Yuen,

             *Defendant-Appellant.*

─────────────────────────────────────

**FOR DEFENDANT-APPELLANT:**       Jonathan I. Edelstein, Edelstein & Grossman, New York, NY.

**FOR APPELLEE:**                                    Martin S. Bell, Justin Anderson, Assistant U.S. Attorneys, *for* Preet Bharara, U.S. Attorney for the Southern District of New York, New York, NY.

Appeal from a January 25, 2013 judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, *Chief Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of conviction entered on January 25, 2013, is **AFFIRMED**.

Siu Ping Yuen (also known as Pamela Yuen) appeals from the District Court's judgment of conviction entered on January 25, 2013, following a jury trial, on charges of conspiracy to commit fraud, in violation of 18 U.S.C. § 371; Pell Grant fraud,[1] in violation of 20 U.S.C. § 1097(a); and wire fraud, in violation of 18 U.S.C. § 1343. She also challenges her sentence of 18 months' imprisonment and 3 years' supervised release.

Until her arrest in April 2011, Yuen was the owner and director of USA Beauty School International, Inc. (the "School"), a cosmetology school operating in lower Manhattan. From 2006 through 2010, the School participated in the Federal Pell Grant Program, administered by the United States Department of Education (the "Department"). The Program provides financial aid to low-income students to help cover the costs of their post-secondary education. The School received approximately $4 million in such funds from 2006 through 2010. In response to the Department's concerns regarding the School's financial aid claims, Department agents placed the School under heightened scrutiny, eventually inspecting the School in May 2010 and uncovering numerous

---

[1] Section 1097(a) of Title 20 criminalizes (among other acts) the knowing and willful embezzlement or obtaining by fraud, false statement, or forgery funds provided or insured through federal student assistance programs. Although the January 25, 2013 judgment provides that Yuen is adjudicated guilty of "Embezzlement," its statutory reference is to the more broadly worded 20 U.S.C. § 1097(a). Yuen's indictment makes plain that the conviction relates to her participation in the Pell Grant Program. We therefore refer to Yuen's conviction under 20 U.S.C. § 1097(a) as one for "Pell Grant fraud."

2

inconsistencies in its academic records. This led to Yuen's April 2011 arrest and subsequent prosecution and conviction for Pell Grant fraud and related crimes.

On appeal, Yuen argues principally that the District Court erred by (1) admitting certain Department records into evidence at trial, and (2) denying without a hearing her motion to suppress statements she made during an allegedly custodial interrogation. She further asserts that her sentence was substantively unreasonable. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review, to which we refer only as necessary to explain our decision to affirm.

A.       The Admissibility of Exhibits 625 and 626

Yuen challenges the District Court's admission at trial of Government Exhibits 625 and 626. These exhibits are print-outs provided by the government of computer-generated spreadsheets detailing the Pell Grants received by the School and its students.[2] Yuen contends that the District Court erroneously admitted these exhibits under Federal Rule of Evidence 803(6), the business records exception to the hearsay rule.

We review the admission of business records for abuse of discretion, *see United States v. Ford*, 435 F.3d 204, 214 (2d Cir. 2006), examining the court's legal interpretation of the Federal Rules of Evidence *de novo* and its factual findings for clear error, *see Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 469 (2d Cir. 1998). Rule 803(6) creates an exception to the hearsay rule for any

> record of an act [or] event . . . if: (A) the record was made at or near the time by – or
> from information transmitted by – someone with knowledge; (B) the record was
> kept in the course of a regularly conducted activity of a business . . . ; (C) making the
> record was a regular practice of that activity; . . . and (E) neither the source of
> information nor the method or circumstances of preparation indicate a lack of
> trustworthiness.

[2] As described by the Department, Exhibit 625 lists the Department's authorizations of funding to the School and the School's drawdowns of that funding, from 2006 through 2012. Exhibit 626 purports to list the amount of the Pell Grants received by each of the School's students who participated in the Program from 2007 through 2011.

Fed. R. Evid. 803(6).  The "principal precondition to admission of documents as business records . . . is that the records have sufficient indicia of trustworthiness to be considered reliable." *Saks Intern., Inc. v. M/V "Export Champion,"* 817 F.2d 1011, 1013 (2d Cir. 1987).  "A business record may include data stored electronically . . . and later printed out . . . so long as the original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice." *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994) (internal quotation marks omitted).

Yuen argues that these records failed for several reasons to meet objective standards of reliability.  First, Yuen contends that the government failed to prove that the data underlying the exhibits were prepared pursuant to a business duty.  The record belies this contention.  Teresa Martinez, a senior institutional review specialist with the Department, testified that the participating schools submit the data incorporated into the Department spreadsheets in the regular course of their business.  She explained that the Department relies on the spreadsheets generated from that data to conduct program reviews.  The data were therefore submitted pursuant to a business duty.

Second, Yuen argues that the data were impermissibly collated into spreadsheets for use in litigation.  The record shows, however, that the Department regularly used such spreadsheets for program reviews, and thus that the original data compilations were prepared "pursuant to a . . . regular business practice," and not for use in litigation.  *Potamkin Cadillac*, 38 F.3d at 632 (internal quotation marks omitted).  Printing out these records did not disqualify them from admissibility under Rule 803(6).

Third, Yuen argues that the government failed to show that the "source of information" or "the method or circumstances of [its] preparation" were trustworthy.  Fed. R. Evid. 803(6).  In addition to providing the testimony described above, however, Martinez explained that schools submitted the underlying data to (1) the Department's Common Origination and Disbursement

4

System, which automatically transmitted the information to the Department's database, and (2) the National Student Loan Database System, which creates a spreadsheet that the Department maintains in the ordinary course of business. She also testified that she verified the accuracy of portions of the relevant data. On this basis, the District Court could reasonably find that Exhibits 625 and 626 bear "sufficient indicia of trustworthiness to be considered reliable." *Potamkin Cadillac*, 38 F.3d at 632 (internal quotation marks omitted).

Yuen argues further that the government failed to lay a proper foundation for admission of the business records. To be admitted into evidence, the records must be authenticated by a "custodian or another qualified witness," unless they are self-authenticating. Fed. R. Evid. 803(6). An individual provides an adequate foundation when her testimony demonstrates that she is "sufficiently familiar with the business practice" of a relevant entity and that the "records were made as part of that practice." *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995) (internal quotation marks omitted). The District Court committed no error in finding that Martinez's testimony fulfilled these requirements.

We therefore conclude that the District Court did not abuse its discretion in admitting Exhibits 625 and 626.

### B. Yuen's Motion to Suppress

Yuen also challenges the District Court's denial, without a hearing, of her motion to suppress statements that she made in an interview with Department agents during their May 2010 inspection of the School. During that interview, Yuen admitted (according to the testimony of a Department employee) that two students received Pell Grants despite not having high school diplomas. Yuen argues that the statements should have been suppressed because they were made during an interrogation that she characterizes as custodial, and – absent advice of her constitutional rights – in alleged contravention of *Miranda v. Arizona*, 384 U.S. 436 (1966). On consideration of

5

Yuen's motion, the District Court held that, even accepting as true the relevant facts alleged in Yuen's affidavit, the interrogation was not "custodial" and Yuen's statements were therefore admissible.

Even assuming that the District Court erred in denying the motion or in failing to conduct a hearing on the motion, however, we comfortably conclude that any error was harmless. We assess the harmlessness of a court's erroneous admission of a defendant's custodial statement by considering: "(1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted testimony; and (4) whether such evidence was cumulative of other properly admitted evidence." *Perkins v. Herbert*, 596 F.3d 161, 177 (2d Cir. 2010) (internal quotation marks omitted). On each of these factors, Yuen's challenge fails.

The prosecution's case against Yuen was strong even without the challenged statements: there was abundant evidence demonstrating that Yuen "knowingly and willfully" committed the fraud. 20 U.S.C. § 1097(a). Schools receiving Pell Grants must document student attendance and ensure that students have high school diplomas or an equivalent. Multiple witnesses – all of whom were employees of the school and some of whom were indicted co-conspirators – testified that Yuen directed them to create fraudulent high school diplomas for students, sometimes assisting them in performing the task. The record also contains testimony that School employees falsified federal student aid applications and that Yuen participated in that process. In addition, ample testimonial evidence demonstrated that Yuen encouraged School employees to falsify student attendance records. The prosecution's evidence of Yuen's knowing and willful participation in the fraud was thus strong even without Yuen's statements during the 2010 interview.

Further, the prosecution did not mention Yuen's inculpatory statements during its opening or its closing, and asked relatively few questions about the statements during the direct examination

6

of a supervisory agent of the Department. Instead, it emphasized the physical evidence and the testimony of cooperating witnesses. The government relied little on the statements in pursuing the prosecution.

Finally, although it is true that confessions are "like no other evidence," *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991), Yuen's statements fell well short of being a complete confession. Rather, they concerned an "isolated aspect[] of the crime" and were "incriminating only when linked to other evidence." *Id.* Yuen's statements were merely cumulative of the properly admitted evidence, particularly in light of the extensive record evidence of Yuen's forgery of high school diplomas.

Considering these factors together, we conclude that any error in admitting Yuen's statements was harmless.

### C.    Yuen's Sentence

Finally, Yuen challenges the substantive reasonableness of her sentence. As a 77-year old woman suffering from serious illness with a prognosis she describes as terminal, she argues that the District Court took inadequate account of her medical circumstances and her charitable works, among other factors, when it imposed the sentence requiring 18 months' incarceration, all but 33 days of which she had served by August 28, 2013, when she was released on bail by order of our Court.

"We will . . . set aside a district court's *substantive* determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted). Yuen was sentenced to an 18-month term of imprisonment, representing a 69-month downward variance from the low end of the applicable Guidelines range of 87 to 108 months. We are hard pressed to imagine any reasonable basis for Yuen to characterize Chief Judge Preska's judgment as falling outside the range of permissible decisions, and therefore affirm Yuen's sentence. We recommend

7

that the Bureau of Prisons evaluate on an expedited basis any petition for compassionate release filed by Yuen. *See* 18 U.S.C. § 3582(c)(1)(A).

## CONCLUSION

We have considered Yuen's remaining arguments on appeal and find them to be without merit. For the reasons set out above, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court